**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**BECK CHEVROLET CO., INC.,**

                                         **Plaintiff,**

                                                              **Case No. 11 Civ 2856 (AKH)**

              **-against-**

**GENERAL MOTORS LLC,**

                                         **Defendant.**
-------------------------------------------------------------------X

**PLAINTIFF BECK CHEVROLET CO., INC.'S**
**REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF ITS RENEWED MOTION FOR**
**LEAVE TO AMEND THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 2

LEGAL STANDARD FOR AMENDMENTS TO PLEADINGS ............................................. 2

ARGUMENT .............................................................................................................................. 3

    I.   The Purpose of Beck's Amendment ............................................................................ 3

    II.  Beck's Primary Proposed Amendment Which Adds
          Requests for Injunctive Relief Is Not Futile ................................................................ 4

    III. Beck's Other Proposed Amendments Relate to the
          Issue of Damages ....................................................................................................... 10

    IV. Beck's Proposed Amendment Has Not Been
          Unduly Delayed ......................................................................................................... 12

    V.  GM Would Suffer No Prejudice by the Proposed Amendment ................................... 16

CONCLUSION .......................................................................................................................... 20

ADDENDUM

    Brief of General Motors Corp., *Cadillac/Oldsmobile/Nissan Center, Inc. v.
    General Motors Corp.*, Case No. 04-1450 (1st Cir.) (Excerpt)

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                                PAGE(S)

*Action Nissan Inc. v. Nissan North America,*
   454 F.Supp.2d 108 (S.D.N.Y. 2006)................................................................12, 15, 16

*Advanced Portfolio Technologies Inc. v. Advanced Portfolio Technologies Limited,*
   1996 WL 51190 (S.D.N.Y. 1996)..........................................................................4

*AEP Energy Services Gas Holding Company v. Bank of America, N.A.,*
   626 F.3d 699 (2d Cir. 2010)................................................................................2, 3

*Bronx Auto Mall, Inc. v. American Honda Motor Co., Inc.*
   934 F.Supp. 596, *affd.* 113 F.3d 329 (1997)............................................5, 6, 9, 10

*Cadillac/Oldsmobile/Nissan Center, Inc. v. General Motors Corp.,*
   391 F.3d 304 (1st Cir. 2004).................................................................................7, 8

*City of New York v. Group Health Inc.*
   649 F.3d 151 (2d Cir. 2011).................................................................................2

*Coady Corp. v. Toyota Motor Distributors, Inc.,*
   361 F.3d 50 (1st Cir. 2004)...............................................................................6, 7, 8

*Duling v. Gristede's Operating Corp.,*
   265 F.R.D. 91 (S.D.N.Y. 2010) .....................................................................2, 3, 4, 19

*Foman v. Davis,*
   371 U.S. 178 (1962).....................................................................................2, 14, 20

*General Motors Corp. v. Villa Marin Chevrolet, Inc.,*
   Case No. 98 Civ. 5206 (E.D.N.Y. December 2, 1999).......................................9, 10

*Lerman v. Chuckleberry Publishing, Inc.,*
   544 F.Supp. 966 (S.D.N.Y. 1982) ........................................................................3

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,*
   562 F.3d 553 (3d Cir. 2009)................................................................................9

*Metro Motors, LLC v. Nissan Motor Corp in USA,*
   170 F.Supp2d 888 (D.Minn. 2001)......................................................................8

*Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,*
   392 F.2d 380 (2d Cir. 1968)................................................................................19

*Milanese v. Rust-Oleum Corp.,*
   244 F.3d 104 (2d Cir. 2001)................................................................................18

*Monahan v. New York City Dep't of Correction*
   214 F.3d 275, 285 (2d Cir. 2000) ........................................................................19

*PCB Peizotronics, Inc. v. Kistler Instrument Corporation,*
   1999 WL 1067569 (W.D.N.Y. 1999) ....................................................................4

*Quentin Group LLC v. Interlink Products Int'l Inc.,*
   1997 WL 313156 (S.D.N.Y. 1997).........................................................................4

*Rachman Bag Company v. Liberty Mutual Insurance Company*
   46 F.3d 230 ...........................................................................................................13

*Reisner v. General Motors Corporation,*
   511 F.Supp. 1167 (S.D.N.Y. 1981) ......................................................................17

*Ronzani v. Sanofi S.A.,*
   899 F.2d 195 (2d Cir. 1990)..................................................................................20

*Rustolo v. City of New York,*
   514 F.3d 184 (2d Cir. 2005)..................................................................................16

*Saccucci Auto Group, Inc. v. American Honda Motor Co., Inc.,*
   Case No. 09-121-ML, 2009 U.S. Dist. LEXIS 122015 (D.R.I. January 26, 2009) ..................9

*State Farm Ins. Companies v. Kop-Coat, Inc.,*
   183 Fed.Appx. 36 (2d Cir. 2006)....................................................................17, 18

*State Teachers Retirement Board v. Fluor Corporation,*
   654 F.2d 843 (2d Cir. 1981).......................................................................12, 13, 16

*Town of New Windsor v. Tesa Tuck, Inc.,*
   919 F.Supp 662 (S.D.N.Y. 1996) .........................................................................13

*United States v. Continental Illinois National Bank and Trust Company of Chicago,*
   889 F.2d 1248 (2d Cir. 1989)................................................................................18

*United States v. International Business Machine Corp.,*
   66 F.R.D. 223 (S.D.N.Y. 1975) ..............................................................13, 16, 17

STATUTES

Mass Gen. Laws ch. 93B, § 12A ...............................................................................6

Mass Gen. Laws ch. 93B, § 4(3)(k) ...........................................................................7

N.J.Stats. 56:10-29....................................................................................................9

N.Y. Unif. Comm. Code § 1-201(2) ..........................................................................5

N.Y. Veh. & Tr. Law § 463(2) ........................................................................ *passim.*

N.Y. Veh. & Tr. Law § 469 ...........................................................................................5, 9, 10

N.Y. Veh & Tr. Law § 470 .....................................................................................................5

R.I.Gen.Laws § 31-5.1-13......................................................................................................9

OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009)...................................................................................5

Fed. R. Civ. P. Rule 15(a)(2) ................................................................................................. 2

Fed. R. Civ. P. Rule 56(e)(1) ...............................................................................................15

## PRELIMINARY STATEMENT

Unfortunately, although not surprisingly, GM has decided to fiercely litigate a garden-variety request for leave to amend a pleading.  Beck's motion seeks leave to further amend the Amended Complaint, primarily to modify the relief requested to expressly seek injunctive relief with respect to certain of its Dealer Act claims, and also to detail the money damages suffered by Beck and assert additional facts arising since the submission of the current complaint and exacerbating and extending injuries suffered by Beck.  The proposed amendment does not add any new causes of action or new parties.

GM argues that this motion has been inordinately delayed, resulting in prejudice.  GM also argues the proposed amendment would be futile.  GM's arguments entirely lack merit. Beck's proposed amendment comes at this time because it is being made in response to GM's first substantive attack on Beck's claims.  There has been no undue delay.  In fact, it was GM's request to reverse the usual order and exchange expert reports prior to fact discovery that has been the primary source of delay in this case.

Also, GM cannot claim prejudice. The proposed amendment does not change the causes of action or the theory of the case or add parties, but simply adds requests for injunctive relief with respect to certain Dealer Act violations and pleads supplementary allegations related to injury and damages. Notably, GM has not engaged in any discovery in this case: GM has not propounded a single document demand, served a single interrogatory, or taken a single deposition.  A case management plan has not even been entered in this case.  Thus, there is no unreasonable or added burden to GM.

Finally, the amendment adding requests for injunctive relief is not futile.  Under New York's Dealer Act, the grant of injunctive relief is subject to a relaxed standard, without the need to show any of the traditional elements, such as irreparable harm.

Accordingly, Beck's motion for leave to file the Second Amended Complaint should be granted in its entirety.

## STATEMENT OF FACTS

The Court is respectfully referred to the Declaration of Russell P. McRory, Esq. dated March 28, 2012 (Dkt. No. 54) (the "McRory MLA Decl.) and the accompanying Reply Declaration of Russell P. McRory dated May 7, 2012 (the "McRory MLA Reply Decl.") for a complete recitation of the relevant facts.

## LEGAL STANDARD FOR AMENDMENTS TO PLEADINGS

The Federal Rules provide that "a party may amend its pleading…with…the court's leave.   The court should freely give leave when justice so requires." Fed. R. Civ. P. Rule 15(a)(2).  The United States Supreme Court held that:

> *...this mandate [of Federal Rule 15(a)(2)] is to be heeded.*  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'  .

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).   Thus, leave may only be denied "if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would prejudice the opposing party or (4) would be futile." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96 (S.D.N.Y. 2010) (quotation omitted).

"The rule in [the Second C]ircuit is to allow a party to amend unless the nonmovant demonstrates prejudice or bad faith." *City of New York v. Group Health Inc.* 649 F.3d 151, 157 (2d Cir. 2011).  An "[a]mendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial

2

or significantly delay resolution of the dispute." *AEP Energy Services Gas Holding Company v. Bank of America, N.A.*, 626 F.3d 699, 725-726 (2d Cir. 2010) (quotations omitted).

Leave to amend may also be opposed on the grounds of futility.  "Leave to amend may be denied on the grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise a triable issue of fact."  *Id.* at 726; *see also Duling*, 265 F.R.D at 103. ("Generally, a proposed amendment is considered futile when it fails to state a claim."); *Lerman v. Chuckleberry Publishing, Inc.,* 544 F.Supp. 966, 968 (S.D.N.Y. 1982) ("Unless a proposed Amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense shall not be considered on a motion to amend").

## ARGUMENT

### I

### The Purpose of Beck's Proposed Amendment

A principal purpose of Beck's proposed second amended complaint is simply to modify the relief sought to expressly seek injunctive relief with respect to certain of GM's violations of the Dealer Act.  The proposed amendment also details how GM's continued wrongful conduct has further injured Beck and provides more detail as to the calculation of money damages suffered by Beck.  The amendment does not add new substantive claims or new parties and does not enlarge the scope of the case.

In GM's memorandum of law in support of its summary judgment motion, at pp. 15-16 (Dkt. No. 41), GM relied on certain cases holding that whether a plaintiff has Article III standing may depend on whether the plaintiff is seeking money damages or injunctive relief.  *See* Beck MSJ Opp. Mem., at pp. 25-31 (Dkt. No. 46).  Accordingly, the focus of Beck's proposed amendment concerns the threshold issue of subject matter jurisdiction, specifically GM's assertion that Beck's claims are not ripe because Beck has not suffered any injury-in-fact.

3

The proposed amendment directly addresses this issue by, in part, specifying that the relief requested for certain Dealer Act claims includes injunctive relief.  GM overlooks that Beck already explicitly seeks injunctive relief in connection with its claim under section 463(2)(ff) that GM's threatened change to Beck's assigned market area is an unfair and unreasonable modification to Beck's franchise.   In fact, because of the "automatic stay" language in subdivision (ff), a preliminary injection is already in place enjoining GM from implementing that modification.  *See* N.Y. Veh. & Tr. L. § 463(2)(ff)(3).

The proposed amendment simply adds requests for injunctive relief as to other, but not all, of Beck's Dealer Act claims.  Indeed, these existing claims already sound in injunctive relief. For example, a determination that GM's sales performance or facility standards are unreasonable and violate subdivisions (c) and (gg) of the Dealer Act would make those standards unenforceable, resulting in a *de facto* injunction.  The proposed amendment makes that request for injunctive relief explicit, in keeping with the authority cited by GM in its summary judgment motion.

As demonstrated in Beck's moving papers, leave to amend to modify the relief requested in a pleading is routinely granted.  *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 95-96 (S.D.N.Y. 2010); *PCB Peizotronics, Inc. v. Kistler Instrument Corporation*, 1999 WL 1067569 (W.D.N.Y. 1999); *Quentin Group LLC v. Interlink Products Int'l Inc.*, 1997 WL 313156 (S.D.N.Y. 1997); *Advanced Portfolio Technologies Inc. v. Advanced Portfolio Technologies Limited*, 1996 WL 51190 (S.D.N.Y. 1996).  It should be granted here as well.

## II.

### Beck's Proposed Amendment Adding
### Requests for Injunctive Relief Is Not Futile

GM argues that Beck's additional requests for injunctive relief would be futile because it would be unable to show irreparable harm.  Even were that the case – which it is not – a showing

4

of irreparable harm in not required to obtain injunctive relief under the Dealer Act.  GM's argument cannot overcome the plain words of the Dealer Act and, therefore, GM simply ignores the statutory language.  In fact, the Dealer Act expressly provides that any "dealer who *is or may be aggrieved* by a violation [of the Dealer Act]…*shall be entitled to sue for, and have*, injunctive relief…" N.Y. Veh. & Tr. Law § 469(a) (emphasis added).   In other words, a dealer *shall* be entitled to injunctive relief upon showing a statutory violation and that he "may be aggrieved" by that violation.

The term "aggrieved" is not defined in the Dealer Act.  However, it is defined in the leading legal dictionary as "having legal rights that are adversely affected; having been harmed by an infringement of legal rights." Black's Law Dictionary (9th ed. 2009).  Even broader is the definition found in the Uniform Commercial Code:  "Aggrieved party means a party entitled to resort to a remedy." N.Y. Unif. Comm. Code § 1-201(2). Application of the UCC definition is proper because automobile franchise agreements are generally deemed to be contracts for the sale of goods.  *See Bronx Auto Mall, Inc. v. American Honda Motor Co., Inc.*  934 F.Supp. 596, 611, *affd.* 113 F.3d 329 (1997); N.Y. Veh & Tr. Law § 470 ("The provisions of this article shall be in addition to and not in lieu of those contained in the uniform commercial code").

In fact, GM's *exact* legal argument has already been rejected in the Southern District in the *Bronx Auto Mall* case.  In *Bronx Auto Mall*, Judge Kaplan rejected Honda's argument that a dealer must show irreparable harm in order to obtain injunctive relief under the Dealer Act:

> To begin with, [Honda] ignores Section 469 of the New York Act, which provides that "[a] franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, *and have, injunctive relief* and damages ..." The statute thus appears to reflect a legislative determination that a franchised dealer threatened with non-renewal does not have adequate legal remedies and is faced with the risk of irreparable injury. *Cf. SEC v. Kalvex, Inc.,* 425 F.Supp. 310, 316 (S.D.N.Y.1975) (SEC need not show irreparable injury to obtain injunction under statute entitling it to such relief "upon a proper showing").

*Bronx Auto Mall*, 934 F.Supp at 612 (emphases in original).

In fact, First Circuit authority cited *by GM* in support of its concurrent motion for summary judgment comes to the same conclusion.[1]

*Coady Corp. v. Toyota Motor Distributors, Inc.*, 361 F.3d 50 (1st Cir. 2004), dealt, in part, with a dealer's claim that Toyota's short-term renewal of its dealer agreement containing a non-standard clause imposing Toyota's version of 100 RSI violated the Massachusetts dealer act. Although Coady did not seek injunctive relief with respect to the renewal claim, the First Circuit observed the following:

> The most serious renewal claim involves Toyota's apparent continued insistence on the provision requiring 100 percent sales efficiency. Admittedly, it has not enforced this provision by termination or refusal to renew; and, as the district court found and Coady does not dispute, this negates any obvious damages. *But this does not explain why, if the provision is improper, Coady does not deserve an injunction*…Even if the provision were not enforced, its presence could hamper Coady's operations and impair its ability to borrow…*There is also remedy language in chapter 93B suggesting a lenient standard for injunctions – the statute says the test is whether a violation "may have the affect of causing" or "loss money any property*…

*Id*. at p. 61 (emphases added).[2]

The *Coady* court recognized that use of an unfair sales performance standard, even in the absence of an actual attempted termination and obvious money damages, is still a cognizable injury giving the dealer standing to seek injunctive relief. The First Circuit further explained why the language in the statute creating the injunctive remedy suggested a lenient standard:

---

[1]   Which may explain why GM does not cite or attempt to distinguish these cases in its opposition to the instant motion.

[2]   The statutory remedy language referred to in *Coady* states: "A motor vehicle dealer, if it has not suffered any loss of money or property, *may obtain final equitable relief* if it can be shown that the unfair method of competition, or unfair act or practice *may have the effect of causing such loss of money or property*." Mass. Gen. Laws ch. 93B, § 12A (emphases added).

> The [Massachusetts dealer act] provision says that the dealer, even if it has not suffered a loss of money or property, "may" obtain an injunction if the practice "may" cause such a loss. We read the first "may" as licensing an injunction, perhaps even encouraging it, but not as compelling it regardless of circumstances. Coady has not relied on the provision, so our reading is subject to further enlightment – by means of case law or legislature history – in some future case.

*Id*. at p. 61, n. 8.

Later that same year, the First Circuit revisited the issue first raised in *Coady*. In *Cadillac/Oldsmobile/Nissan Center, Inc. v. General Motors Corp*., 391 F.3d 304 (1st Cir. 2004), the plaintiff dealer sued Old GM for money damages pursuant to the Massachusetts dealer act for unlawfully owning and operating a competing dealership.[3] Like the plaintiff in *Coady,* the plaintiff in *Cadillac Center* did not request injunctive relief. *Id*. at n. 4. The First Circuit affirmed the dismissal of the money damages claim because the dealer failed to establish any money damages arising from the statutory violation. However, the First Circuit's decision did not end there, but went on to address the dealer's entitlement to injunctive relief:

> [Plaintiff's] argument totally overlooks the availability of injunctive relief. Under the statute as written, a dealer who fears unfair competition from a manufacturer's overlong ownership and operation of a competing dealership can seek injunctive relief without have to show actual damages *(or even threatened irreparable harm, as is normally required for an injunction)*. Rather, the plaintiff may obtain relief upon a showing that the defendants' violation *may* cause the plaintiff injury.

*Cadillac Center*., at p. 311 (internal citation omitted). Thus, in *Cadillac Center,* the First Circuit went beyond *Coady* and recognized that the injunctive relief provision of the Massachusetts dealer act was not merely lenient, but also did not require a dealer to show irreparable harm.[4]

---

[3]  Massachusetts, like New York and virtually all other states, prohibits automobile manufacturers from owning dealerships, except in limited circumstances or for short periods of time. *See* Mass. Gen. Laws ch. 93B, § 4(3)(k); *See also* N.Y. Veh. & Tr. L. §463(2)(y).

[4] This precise issue as framed in *Coady* and *Cadillac Center* will not, however, be revisited again. That is because the Massachusetts legislature repealed section 12A and replaced it with section 15, which imposes a stricter standard to obtain an injunction.

In fact, it was Old GM itself (represented by GM's attorneys here) that made this argument in *Cadillac Center*:

> While proof of harm is required to recover money damages, the legislature created a private right of action for injunctive relief upon a more lenient showing that a manufacturer's continued operation of a dealership *may* cause the loss of money or property…Thus the Cadillac Center could have sought injunctive relief at any time it felt that GM was operating Cadillac of Norwood in violation of the statute, and obtained such relief upon a showing (1) that the Cadillac Center's RMA encompassed Cadillac of Norwood; and (2) that GM's continued operation of the dealership "may have the effect of causing" the Cadillac Center a loss of money or property.  However the Cadillac Center made a calculated decision not to seek injunctive relief because its owner wanted to purchase Cadillac of Norwood as an ongoing operation.

Brief of General Motors Corp., *Cadillac/Oldsmobile/Nissan Center, Inc. v. General Motors Corp.*, Case No. 04-1450 (1st Cir.).[5]  There is no principled reason for GM to be making the exact opposite argument in this case.

Here, if anything, New York's Dealer Act contains an even more generous standard for injunctive relief than the Massachusetts statute at issue in *Coady* and *Cadillac Center*.  Under the Massachusetts statute at issue in *Coady* and *Cadillac Center*, a dealer *may* have injunctive relief upon a showing that a violation *may* injure its business or property. In contrast, the New York Dealer Act provides that a dealer *shall* have injunctive relief merely upon a showing that the dealer *may* be aggrieved by a violation.

Moreover, a statute requiring "injury to business or property" has been held to demand a higher showing than mere "injury."  *See Metro Motors, LLC v. Nissan Motor Corp in USA*, 170 F.Supp. 2d 888 (D.Minn. 2001).  Under New York law, the necessary showing is even lower: merely that the dealer "may be aggrieved."[6]

---

[5]  The relevant excerpt of Old GM's brief in *Cadillac Center* is annexed to the Addendum hereto.

[6]   In fact, with claims under subdivision (d) and (e) [termination] and subdivision (ff) [modification], there is no showing of any sort needed to obtain a preliminary injunction.  Rather, merely commencing an action operates to stay, without bond, the threatened termination or modification.  *See* N.Y. Veh. & Tr. L. §§ 463(2)(e)(1) & (ff)(3).

The cases cited by GM for the proposition that Beck must show irreparable harm to obtain an injunction (*See* GM MLA Opp. Mem., at pp. 7-8) cannot overcome *Bronx Auto Mall* and the First Circuit cases discussed above.   They are inapposite for the same reasons that the *Bronx Auto Mall* court found similar cases cited by Honda in to be unpersuasive: they either involve dissimilar statutes of other states, or do not address the language of section 469 of the Dealer Act at all.  *Id.* n. 26 at p. 613 (the cases "relied upon by [Honda] are not to the contrary. *Sherwood* did not involve the New York Act at all.  *Maier-Schule* did not address the language of the New York Act quoted in the text").

The first case cited by GM, *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,* 562 F.3d 553 (3d Cir. 2009), involved New Jersey's dealer act.  However, the New Jersey act's remedy provision provides, in pertinent part, that a dealer "may bring an action against [a franchisor]…to enjoin any violation of this act…" N.J.Stats. 56:10-29.

The second case cited by GM, *Saccucci Auto Group, Inc. v. American Honda Motor Co., Inc.*, Case No. 09-121-ML, 2009 U.S. Dist. LEXIS 122015 (D.R.I. January 26, 2009), involved Rhode Island's dealer act.  However, the Rhode Island act's remedy provision provides, in pertinent part, that a dealer "who *is* so injured in his or her business or property by a violation…may bring a civil action…to enjoin further violations…" R.I.Gen.Laws § 31-5.1-13 (emphasis added).  Neither the New Jersey act nor the Rhode Island act contain language anything like the New York Dealer Act: a dealer "who is or may be aggrieved by a violation…shall be entitled to sue for, and have, injunctive relief and damages." N.Y. Veh. & Tr. L. § 469(a).

The third case cited by GM, *General Motors Corp. v. Villa Marin Chevrolet, Inc.,* Case No. 98 Civ. 5206, (E.D.N.Y. December 2, 1999), which is at least a New York case, does not

address section 469 of the Dealer Act at all.  In fact, the decision made clear that Villa Marin based its application on an unusual judicial estoppel theory.

Moreover, for the same reasons articulated in *Bronx Auto Mall*, Beck "would be entitled to an injunction *irrespective* of the New York Act."  *Bronx Auto Mall*, 934 F.Supp. at 612 (emphasis added); *see also id.* at 612, 614 ("In all the circumstances, the Court finds that plaintiff, absent an injunction, will suffer irreparable injury for which it has no adequate remedy at law….Accordingly, plaintiff would be entitled to a permanent injunction independent of the provisions of section 469 of the New York Act.").

Lastly, as set forth above, on a motion for leave to amend, the proponent must merely state a claim.  Here, there can be no doubt that Beck has stated claims for injunctive relief under the Dealer Act.

## III.

## Beck's Other Proposed Amendments
## Relate to the Issue of Damages

Beck's other proposed amendments relate to the quantification of money damages and detail additional, more recent, injuries suffered by Beck.  GM agrees that "these claims do not substantively change those set forth in the operative Amended Complaint."  *See* GM MLA Opp. Mem., at p. 9 (Dkt. No. 56).  Thus, it is hard to see why GM objects.

GM also asserts that "Beck's moving brief does not provide any new facts to support the proposed amendments."  *Id.*  GM does not explain why "new" facts are necessary.  The primary purpose of the amendment is to expand the relief requested, not add new facts.  In any event, the proposed amendment does add new facts relevant to the continuing injuries being suffered by Beck as a result of GM's violations of the Dealer Act.

Specifically, Beck seeks to allege additional facts concerning injury resulting from the resignation of Beck's sales manager in January 2012.  As set forth in the Amended Complaint,

GM's publication of false and misleading daily reports showing Beck to be an underperforming dealer has damaged Beck's business reputation and made it difficult to keep and attract top talent. *See* Amended Complaint, at ¶¶ 66-76 (Dkt. No. 33).  This is illustrated in April 2012 month end Daily Sales Report, which is annexed as Exhibit 47 to the accompany reply declaration.

Using New York State average sales effectiveness, GM reported Beck's April 2012 monthly sales objective to be 73 vehicles.  Beck actually sold 30 vehicles during April. Therefore, the Daily Sales Report, which is published to all dealers in the New York City Zone, shows Beck came in dead last at 41.1% of its objective.  However, if Beck's monthly sales objective were calculated according to the same formula as all other dealers, its objective should have been *only 28 vehicles*.  *See* McRory MLA Reply Decl., at ¶ 54.  Thus, if GM treated Beck like all other dealers, the Daily Sales Report would show Beck had actually attained 107.1% of its monthly sales objective.  In other words, Beck is actually one of the better performers in the New York City Zone, but GM makes Beck appear to be the worst.

As set forth in the proposed amendment, and in Beck's opposition to GM's summary judgment motion, the resignation of Beck's sales manager was a direct result of GM's publication of inflated sales objectives for Beck, Beck's disappearance from the Daily Sales Reports, and the inexplicable special allocations.  This led the sales manager to question Beck's viability and seek employment elsewhere.  The resignation had an immediate and profound negative effect on Beck's sales and revenues.  *See* Prop. 2nd Amd. Compl., at ¶¶ 92-94, Ex. 31; *see also* Geller MSJ Opp. Decl., at ¶¶ 82-91 (Dkt. No. 44).

GM also accuses Beck of "cling[ing] to claims that it concedes are moot."  GM Opp. Mem., at p. 9 (Dkt. No. 56).  Those claims are not moot.  As demonstrated in Beck's opposition to GM's summary judgment motion, GM's withdrawal of the April 6 Letter did not moot Beck's entitlement to statutory attorney fees and costs.  *See* Beck MSJ Opp. Mem. at pp. 31-34 (Dkt.

No. 46).  Likewise, GM's decision, made almost one year after the commencement of this action, to pay Beck the price difference on the vehicles that are the subject of Beck's price discrimination claim does not moot Beck's entitlement to the award of statutory attorney fees and costs.  Essentially, GM believes it can walk away scot-fee.  It cannot.

Similar arguments were also rejected not too long ago in the Southern District by Judge Conner.  In *Action Nissan Inc. v. Nissan North America,* 454 F.Supp.2d 108 (S.D.N.Y. 2006), Nissan moved "for summary judgment on plaintiff's damage claims given plaintiff's failure to provide any assessment of damages incurred…"  *Id.* at 132.  However, citing section 469 of the Dealer Act, Judge Conner held that "[u]nder these statutes it is clear that plaintiffs already have sustained 'damages' by pursuing litigation."  *Id.* at 132-133.

GM argues this "would create perverse policy incentives."  GM MLA Opp. Mem., n. 3, at p. 10 (Dkt. No. 56).  Quite the opposite.  The Dealer Act is a remedial statute intended to end abusive and predatory acts by automobile manufacturers by outlawing certain acts as unfair business practices and giving dealers a private right of action.  *See* Beck MSJ Opp. Mem., at pp. 8-10 (Dkt. No. 46).  Holding manufacturers accountable for engaging in unfair business practices, when they cease the unlawful conduct only *after* the dealer commences an action, is consistent with the salutary legislative purpose of the Dealer Act and would serve to discourage manufacturers from engaging in such unfair business practices in the first instance.[7]

## IV.

### Beck's Proposed Amendment
### Has Not Been Unduly Delayed

It is well-settled that "[m]ere delay…absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *State Teachers*

---

[7] GM's point is also not well taken because prior to commencing this action, Beck had complained time and again, for months on end, about each of the issues that underlie its claims here.  Much like Captain Renault in *Casablanca*, GM is shocked  – shocked! – that Beck would actually dare to seek redress in the courts.  *See e.g.* Amended Complaint Exs. 4, 5, 10, 12 and 14.

*Retirement Board v. Fluor Corporation*, 654 F.2d 843, 656 (2d Cir. 1981); *see also Rachman Bag Company v. Liberty Mutual Insurance Company* 46 F.3d 230, 234-235 (2d Cir. 1995 ("Delay alone…does not usually warrant denial of leave to amend."); *United States v. International Business Machine Corp.*, 66 F.R.D. 223, 228 (S.D.N.Y. 1975) ("Numerous courts have held that the moving party's delay in seeking to amend a pleading is not, in and of itself, sufficient reason to deny the motion.  Delay, inexcusable or excusable, is not alone sufficient to warrant denial of leave to amend") (quotation omitted).

Here, there has been no unreasonable delay.  Beck's proposed amendment comes now because GM has made its first substantive challenge to Beck's claims.  Notably, to the extent GM asserts Beck has not suffered an injury-in-fact and, therefore, Beck's claims are not ripe, that is a threshold attack on this court's subject matter jurisdiction.  Those arguments could, and should, have been made in a pre-answer motion to dismiss.  GM raised the possibility of moving to dismiss at the August 26, 2011 status conference, but chose not to do so.

As a result, the connection between injury-in-fact and injunctive relief was only revealed for the first time in the cases cited by GM in its motion for summary judgment.  GM's tactical decision to forgo a motion to dismiss and instead request that the parties exchange expert reports created confusion on Beck's part as to GM's intent and any resulting delay should not be attributed to Beck.  *See Rachman Bag Company v. Liberty Mutual Insurance* Company, 46 F.3d 230, 235 (1995) ("Liberty's tardiness may well have been due to its uncertainty as to what issue to focus on rather than bad faith."); *cf Town of New Windsor v. Tesa Tuck, Inc.*, 919 F.Supp. 662, 676 (S.D.N.Y. 1996) ("The only explanation offered is that the motion to amend reflects a change in litigation strategy.  However, neither long delay nor the fact that a proposed amendment is motivated by an afterthought of counsel as to the best theory upon which to proceed, by themselves, suffice as reasons for denying leave to amend.") (quotation omitted).

To the extent GM asserts that Beck has not established money damages as a necessary element of certain of its claim, this is an artificial issue created pre-maturely by GM.  Beck is not obligated, at this early juncture in the case, to secure expert testimony on money damages.  There has been no case management plan entered by the court.  No expert deadline has been set.  Fact discovery is not even complete; indeed GM has not undertaken any discovery whatsoever. Only the expert reports voluntarily exchanged by the parties on limited issues have been exchanged.  As set forth in the accompanying reply declaration, Beck did not understand GM's suggestion to exchange expert reports, "with an eye towards settlement", at such an early stage of the case, meant the reports were to encompass every issue in the case upon which expert testimony might ultimately be offered.  As the United States Supreme Court held:

> It is too late in the day and entirely contrary to the spirit of the Federal Rules…for decisions on the merits to be avoided on the basis of such mere technicalities.  The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive of the outcome…If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

*Foman v. Davis*, 371 U.S. at 182-183.  GM cannot create a default in proof where none exists.

Nevertheless, in response to GM's summary judgment motion, Beck specified the money damages it seeks on its breach of contract claim (lost profits due to GM's failure to allocate sufficient inventory in 2010) and its Dealer Act § 463(2)(a) claim (lost profits on vehicles ordered by Beck that GM failed to deliver).  Beck has submitted sufficient evidence of its money damages on these claims to survive GM's pre-mature summary judgment motion.  Beck also explained that it is suffering additional money damages on its breach of fiduciary duty claim arising from GM sabotaging of Beck's business reputation and lost profits caused by resignation

of sales manager.[8]   Those damages cannot be fully quantified now because they are ongoing.

Beck's prior sales manager resigned in January 2012 and was only replaced in mid-March 2012.

The before-and-after-effects are still being felt and it is pre-mature to make a final determination

of the resulting damages.

Indeed, GM's essential premise has already been rejected in the Southern District.   In

*Action Nissan*, Nissan moved "for summary judgment on plaintiff's damages claims given

plaintiff's failure to provide any assessment of damages incurred…"[9]   *Action Nissan*, 454

F.Supp.2d at 132.   Judge Conner denied Nissan's motion.   With respect to the Dealer Act claims

the Court held that:

> [w]hile plaintiff's failure to detail its damages on discovery does
> not defeat plaintiff's right to assert these causes of action, it may
> limit the damage award, if any….

*Id.* at 133.   Accordingly, the court directed Action Nissan to inform Nissan if it intended to rely

on expert testimony to support its money damages claims and, if so, to submit an expert report.

*Id.*; *see also e.g.* Fed. R. Civ. P. Rule 56(e)(1) ("If a party fails to properly support an assertion of

fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the

court may…give an opportunity to properly support or address the fact").

With respect to the contract claim, the *Action Nissan* court held as follows:

> As for [Nissan's] argument that plaintiff's failure to identify
> damages defeats its breach of contract claim, that argument is
> likewise rejected.   It is without doubt that damages are an essential
> element of a breach of contract action.   [Nissan] argues that no
> harm or damages exist because it agreed to postpone the effective
> termination date…However, this is not only subject to any expert

---

[8]   These damages are also recoverable under section 463(2)(gg) (unfair and unreasonable sales performance standard) claim.  Although the main thrust of Beck's subdivision (gg) claim is GM's unfair use of the state average benchmark and its effect on RSI and facility requirements, subdivision (gg) is also implicated by the harm to Beck's business reputation caused by GM's publication of inflated monthly sales objectives in the Daily Sales Reports. Accordingly, and contrary Beck's statement in its brief opposing summary judgment, Beck will continue to seek money damages,  as well as injunctive relief, on its subdivision (gg) claim.  *See* Beck MSJ Opp. Mem., at p. 12.
[9]   Again, if this argument sounds familiar, that is no accident.   The firm representing GM here also represented Nissan in *Action Nissan*.

> analysis on lost sales…but also ignores the fact that [the dealership's owner] identified damages…These damages…are sufficiently established to withstand defendant's motion for summary judgment.

*Id.* For similar reasons, Beck's proposed amendments quantifying the money damages it has suffered and providing additional detail on new injuries suffered that have caused money damages should be granted and GM's motion for summary judgment should, therefore, be denied. To the extent any further detail or expert testimony is required on the issue of damages, this Court's Individual Rules of Practice require the entry of a case management plan that governs the timing of expert disclosures.

## V.

## GM Would Suffer No Prejudice
## By the Proposed Amendment

GM argues that it would be prejudiced by Beck's proposed amendment. *See* GM MLA Opp. Mem., at pp. 13-17 (Dkt. No. 56). GM falsely asserts that allowing the proposed amendment will set the case "back to square one" *Id.* at p. 5. These arguments ignore the governing standards for amendments to pleadings.

In the Second Circuit, "[i]n gauging prejudice, we consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay resolution of the dispute." *Rustolo v. City of New York,* 514 F.3d 184, 192 (2d Cir. 2005) (quotation omitted). Typically, "[u]ndue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof." *Id.*, *quoting State Teachers Retirement Board v. Flour Corporation*, 654 F.2d 843, 856 (2d. Cir. 1981) ("This is not a case where the amendment came on the eve of trial and would result in new problems of proof."); *see also United States v. International Business Machines Corporation*, 66 F.R.D. 223, 231 (S.D.N.Y. 1975) ("Defendant does not argue that its ability to present its case

will be prejudiced…The prejudice it asserts is based on a potential delay in the resolution of the charges against it…[T]hat interest does not give rise to the type of prejudice which is a basis for denying leave to amend.")

GM primarily relies on two cases, both cited *passim* throughout its opposition brief: *Reisner v. General Motors Corporation,* 511 F.Supp. 1167 (S.D.N.Y. 1981) and *State Farm Ins. Companies v. Kop-Coat, Inc.,* 183 Fed.Appx. 36 (2d Cir. 2006). However, both *Reisner* and *State Farm* actually demonstrate why GM's opposition is baseless and why Beck's motion should be granted.

In *Reisner,* the plaintiff's motion for leave to amend was brought after "two years [of] extensive discovery." *Id.* at 1171. The *Reisner* court described this discovery as "protracted and acrimonious, and enormous amounts of paper have been generated, some of it literally just paper *e.g.* massive photocopies of massive documents already submitted." *Id,* at n. 11, p. 1172.

The proposed pleading "add[ed] many new factual allegations, several of which seem to be inconsistent with allegation in the earlier two complaints." *Id.* at 1172. The *Reisner* court noted that "[t]he shifting of legal theories and adding of inconsistent allegations raise a substantial doubt as to the good faith of the plaintiff's counsel in asserting them." *Id.* at n. 10. The Court also recognized that because Reisner's proposed amendment added "new or inconsistent factual allegations, new discovery would be needed to allow the defendants to respond to the new facts and the new legal theory. This would delay considerably the disposition of this case, which is already nearly five years old..." *Id.* at 1171[10]

Likewise, *State Farm* offers no help to GM. In *State Farm,* "Appellant's motion to amend was submitted *four years* after the commencement of this action, almost *one year* after the close of discovery, and *five months after* the district court's summary judgment ruling." *State*

---

[10] In fact, this made *Reisner* "the next to the oldest case on [the] Court's docket and a 'judicial emergency.'" *Id.* at 1172-1173.

*Farm*, 183 Fed.Appx. at 38 (emphases added).  In fact, *State Farm* expressly noted that the plaintiffs could have, but "did not move to amend their complaint in response to Kop-Coat's [summary judgment] motion."  *Id., citing Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-114 (2d Cir. 2001) (reversing denial of motion to amend complaint filed in response to defendant's summary judgment motion"); *see also United States v. Continental Illinois National Bank and Trust Company of Chicago*, 889 F.2d 1248 (2d Cir. 1989) (reversing both the District Court and the Bankruptcy Court for denying leave to amend where the amendment was "primarily legal in nature, requiring little discovery").

Here, the facts in this case bear no resemblance whatsoever to the facts in *Reisner* and *State Farm.*  When Beck moved for leave to amend, only seven months had passed since the August 26, 2011 status conference, and four of those seven months were spent preparing and exchanging expert reports *at GM's request.*  Beck moved for leave to amend in direct response to GM's summary judgment motion, which is GM's first substantive challenge to Beck's claims. Beck's proposed amendment does not expand the legal issues to be litigated or add new parties. No new legal theories, no new parties and no new discovery that would not otherwise take place would result from this amendment.

With respect to discovery, GM can hardly claim prejudice when it has not demanded even an *iota* of disclosure from Beck.  GM has not served any document demands, interrogatories, or deposition notices.  GM has never left "square one."

The fact that Beck moves for leave to amend in response to GM's motion for summary judgment is of no moment.  *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-114 (2d Cir. 2001) (reversing denial of motion to amend complaint filed in response to defendant's summary judgment motion).  Moreover, GM overlooks that fact that its motion is not a typical summary judgment motion.  The typical summary judgment motion is only brought after fact discovery,

and often expert discovery, has been completed.   Thus, a late amendment that involves new parties and/or new legal theories requiring the reopening discovery may reasonably be suspect. But that is by no means absolute.  *See Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000) ("…the fact that one party has spent time and money preparing for trial will not usually be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings."); *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 386 (2d Cir. 1968) ("The burden of further discovery and motions is not a satisfactory basis to deny the motion to amend.  Such procedural aspects can be regulated and controlled by the trial court."). In any event, having taken no discovery, the burden of additional discovery on GM is not an issue here.

With respect to the prong of GM's summary judgment motion addressing injury-in-fact and ripeness, GM is simply making a threshold attack on subject matter jurisdiction.  That portion of the motion is nothing more than a belated motion to dismiss dressed in a summary judgment motion's clothing.  With respect to the prong of GM's summary judgment motion addressing proof of money damages, that issue has been artificially and pre-maturely created by GM.   Beck has explained that it understood that parties' *voluntary* agreement to exchange early expert reports was meant to cover core substantive issues "with an eye towards settlement" and not all expert disclosure *in toto*.  *See generally* McRory MLA Reply Decl.

To date, this case has been managed in an informal and unstructured fashion. Notwithstanding this Court's Individual Rules of Practice, and notwithstanding that the parties at one time actually agreed upon a case management plan (which was not submitted to the Court), no such plan has ever been entered.  Accordingly, no discovery deadlines, fact or expert, have been set.  With respect to the very limited disclosure for GM's summary judgment motion, the

Court instructed the parties to proceed informally, 'by letter without a lot of definitions.'  *See* McGrath MLA Opp. Decl., at ¶ 10 (Dkt. No. 58).

Beck viewed the parties' agreement to exchange expert reports early "with an eye towards settlement" against the backdrop of this Court's Individual Rules of Practice – if the exchange of reports did not result in settlement, the case would proceed as usual and a case management plan would be entered detailing the deadlines for full fact and expert discovery.

Against this backdrop, it is impossible to perceive any prejudice whatsoever to GM by permitting Beck to amend its complaint to add requests for injunctive relief and allege additional facts related to damages and injury under the existing causes of action.  The only prejudice GM can point to is denial of its summary judgment motion.  That is not prejudice.  *See Duling*, 265 F.R.D. at 101 ("It is not unusual in litigation for a motion to be re-briefed, or a new motion to be submitted, in response to later developments.  In the context of leave to amend a pleading, any inefficiencies these practices create may be outweighed by other concerns.").

## CONCLUSION

Under these circumstances, Beck's cross-motion for leave to amend should be granted. *See Foman v. Davis*, 371 U.S. at 182 ("The Court of Appeals also erred in affirming the District Court's motion…to allow amendment of the complaint….[T]he amendment would have done no more than state an alternate theory of recovery."); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (abuse of discretion to dismiss complaint without leave to amend a second time where plaintiff offered to amend to correct any perceived deficiencies.).

Accordingly, for the foregoing reasons, Beck's renewed cross-motion for leave to amend the Amended Complaint should be granted.

Dated: New York, New York
       May 7, 2012

                              Respectfully submitted,

                              ROBINSON BROG LEINWAND GREENE
                                   GENOVESE & GLUCK P.C.

                              By:   /s/ Russell P. McRory
                                   Russell P. McRory
                                   875 Third Avenue, 9th Floor
                                   New York, New York 10022
                                   *Attorneys for Beck Chevrolet Co., Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## NO.: 04-1450

## THE CADILLAC/OLDSMOBILE/NISSAN CENTER, INC.
## D/B/A JOHNS SANTILLI'S CENTER FOR AUTOMOBILES,
## PLAINTIFF-APPELLANT

## VS

## GENERAL MOTORS CORPORATION,
## DEFENDANT-APPELLEE

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
## MASSACHUSETTS

## BRIEF OF APPELLEE, GENERAL MOTORS CORPORATION

DANIEL L. GOLDBERG (#29481)
JAMES C. MCGRATH (#76428)
SERENA D. MADAR (#89384)
BINGHAM MCCUTCHEN, LLP
150 FEDERAL STREET
BOSTON, MA  02110-1726
617-951-8000

OF COUNSEL:

LAWRENCE S. BUONOMO
GENERAL MOTORS CORPORATION
400 RENAISSANCE CENTER
MAIL CODE 482-026-601
PO BOX 400
DETROIT, MICHIGAN  48265-400
313-665-7390

*Disclaimer:  Cover page not included as part of original court record.*

circumstances, where the dealers' interests may be opposite.'" *Gallo Mazda Center Corp. v. Mazda Motor of America, Inc.*, 204 F. Supp.2d 144, 149 (D. Mass. 2002) (quotations and citations omitted), *aff'd*, 347 F.3d 20 (1st Cir. 2003).

While proof of actual harm is required to recover money damages, the legislature created a private right of action for injunctive relief upon a more lenient showing that a manufacturer's continued operation of a dealership <u>may</u> cause the loss of money or property:

> A motor vehicle dealer, if it has not suffered any loss of money or property, may obtain final equitable relief if it can be shown that the unfair method of competition, or unfair act or practice may have the effect of causing such loss of money or property.

Mass. Gen. Laws ch. 93B, § 12A; *see also Coady Corp.*, 361 F.3d at 61 ("There is also remedy language in chapter 93B suggesting a lenient standard for injunctions. . . ."). Thus, the Cadillac Center could have sought injunctive relief at any time it felt that GM was operating Cadillac of Norwood in violation of the statute, and obtained such relief upon a showing: (1) that the Cadillac Center's RMA encompassed Cadillac of Norwood; and (2) that GM's continued operation of the dealership "may have the effect of causing" the Cadillac Center a loss of money or property. However, the Cadillac Center made a calculated decision not to seek injunctive relief because its owner wanted to purchase Cadillac of Norwood as an ongoing operation. Having failed to seek injunctive relief before GM sold its interest in the dealership, the legislature made clear that, in order to recover compensatory damages retrospectively, the Cadillac Center must demonstrate the <u>actual</u> "loss of money or property. . . as a result of the use or employment by a manufacturer . . . of an unfair method of competition or an unfair or deceptive act or practice . . . ." *See* Mass. Gen. Laws ch. 93B, § 12A.

The inevitable conclusion that a plaintiff is limited to its actual damages under chapter 93B is further confirmed through a comparison to chapter 93A, the

-21-