# **TAB 9**

# THE STATE OF NEW HAMPSHIRE

ROCKINGHAM COUNTY                                    SUPERIOR COURT

Seacoast Imported Auto, Inc.

v.

Nissan North America, Inc.

Docket No: 218-2010-CV-471

## FINAL ORDER

This case presents an appeal from the New Hampshire Motor Vehicle Industry Board pursuant to RSA 357-C:12 VII. In a twenty-three page Order dated April 12, 2010 the Board rendered a decision in favor of the defendant. Essentially it found that Nissan North America, Inc. terminated its Dealership Agreement with Seacoast Imported Auto, Inc. for good cause shown. That decision is challenged herein.

The relevant facts necessary for the Court to review and decide the issues presented in this appeal are as follows. The principle of the plaintiff, Roger Groux purchased a Nissan franchise located in Exeter, New Hampshire in 1998. At the time Groux owned a Honda dealership in Stratham, New Hampshire. The defendant permitted Groux to move the Nissan franchise he had just purchased from Exeter to Stratham to be joined with the Honda dealership that Groux was operating. Although dual dealerships are apparently frowned on by the defendant generally, in this particular case Nissan authorized the move. Groux expended a substantial sum of money in order to accommodate the new Nissan dealership at his Honda location.

Right from the start the parties had relationship difficulties. They squabbled over the terms of the Dealership Agreement which ultimately was signed. As early as 2003 Nissan looked into the possibility of issuing a default notice to the plaintiff for various

reasons. In fact a notice of termination was sent to Seacoast in 2004. That notice prompted the plaintiff to file a protest with the Board in which it alleged that Nissan engaged in unfair and deceptive practices. In 2005 the Board determined that the notice of termination was defective in that it failed to provide the plaintiff with a 180 day period to cure the alleged defects pursuant to the parties Agreement.

After the Board decided in favor of the plaintiff with respect to the notice of termination filed in 2004, Nissan filed a notice of default in 2005. That was followed by a second notice of termination filed in 2006. For the next year the parties attempted to settle their various disputes unsuccessfully. Each party blames the other for being unreasonable with respect to settlement negotiations. All settlement proposals were revoked by Nissan in 2007. Finally on July 15, 2008 the plaintiff filed its third protest with the Board alleging the arbitrary application of Nissan's exclusivity policy. The issue at that time was Nissan's refusal to allow Seacoast to move its operation to Epping New Hampshire. Ultimately the Board consolidated all prior complaints lodged by the parties into one hearing which took place on February 8 and 9, 2010.

As part of its April 12, 2010 Decision, the Board set forth the claims of both parties as follows:

> "<u>Position of Seacoast</u>: Seacoast alleges that Nissan has not acted in good faith and that there was not good cause to terminate the franchise. Moreover, it argues that Nissan engaged in prohibited conduct in that it arbitrarily applied its exclusivity policy and engaged in bad faith and unconscionable conduct.
> <u>Position of Nissan</u>: Nissan alleges that it has good cause to terminate based on chronically poor sales performance and the failure of Seacoast to designate an approved executive manager exclusively devoted to the Nissan dealership." (p 5)

At the conclusion of its Decision the Board summarized its findings as follows:

> "The Board, after careful review, finds that all of Seacoast's claims in this termination are not supported by the evidence. Based on the record, the Board finds that Nissan acted in good faith and had good cause for termination of the Dealer Agreement with Seacoast under RSA 357-C:7. The Board further finds

2

that Seacoast's claims of prohibited conduct under RSA 357-C:3 are without merit and accordingly denied." (p 22)

Before discussing the specifics of the Court's review of the within appeal, it is important that the parties understand the limited jurisdiction that Superior Court's have with respect to appeals pursuant to RSA 357-C:12 VII. Said statute provides in pertinent part that "all findings of the Board upon all questions of fact properly before the Court shall be prima facie lawful and reasonable. The Order or decision appealed from shall not be set aside or vacated except for errors of law. No additional evidence shall be heard or taken by the Superior Court on appeals from the Board." The parties are not entitled to a de novo hearing as the Court is not permitted to substitute its judgment for that of the Board, Moreover the Court's review must be limited to the record before the Board.

With that standard in mind, the Court will now proceed to review the various claims of Seacoast, the non prevailing party in this appeal. With respect to those claims, the Court will accept the Board's findings of fact and make a determination as to whether the Board made any errors of law. The plaintiff alleges two procedural errors of law. First, Seacoast reports that the Board failed to individually rule on each one of its Requests for Findings of Fact and Rulings of Law in its decision. In support of its claim that this failure constitutes an error of law, the plaintiff cites RSA 541-A:35. Said statute provides in pertinent part that "if in accordance with agency rules a party submitted proposed Findings of Fact, the decision shall include a ruling upon each proposed finding. "

There is no question but that the Board did not rule on each of Seacoast's individual Requests. The defendant argues that the Board is not one of the agencies that has rules regarding how Findings of Fact are to be considered. While the

3

defendant's position on this issue has merit, the Court will decide it instead by reviewing the purpose of the statute. Whether before an agency or a Court the submission of Requests by a party provides protection against the fact finder writing a decision that is limited to a sentence or two and does not contain any substantive discussion of the issues presented. As a fact finder in literally hundreds of cases, this Court concludes that Requests are welcome and helpful if they focus on the substantive issues and are few in number.

In this case what the plaintiff did in its Requests was to separate out various categories of evidence presented to the Board and suggest that a particular Request was supported by a referenced document. The amount of Requests submitted numbered 275. This type of shot gun approach is never beneficial to a fact finder. For example, in this case over twenty Requests involve the testimony of one Donna Martinez. The Board may have determined early on that Ms. Martinez's testimony was not relevant to the key issues which this case presented. If that was the Board's decision, and the Court is not suggesting that it was but merely giving an example, then spending additional time to review over twenty Requests would be unduly burdensome.

Our Supreme Court has recently spoken to the issue of agency Requests for Findings of Fact and Rulings of Law. In <u>Appeal of Donald W. Murdock</u> 156 N.H. 732 (2008) the Court reached the following conclusion: "Although the Personnel Appeals Board could have made more specific findings, the totality of its decision allows for effective Judicial review and provides a sufficient statement of the underlying facts to support its determination. We therefore will not vacate it on that basis." (p 740) The Board's decision in the case at bar is lengthy and fact specific and therefore this Court finds that the Board's failure to address each of the plaintiff's Requests individually does

4

not constitute an error of law.

The second procedural error of law claim is that the Board wrongfully elected to consider other complaints filed by the parties before the 2008 claim that precipitated the hearing in February of this year. Specifically Seacoast argues the Board should not have ruled on the 2004 protest. That protest surrounded Nissan's notice of termination. The plaintiff argues it was withdrawn therefore the issue was moot. The defendant claims it still remained pending. The bottom line is, the Board's election to rule on it had no effect on the underlying issues this case presented, therefore the decision to rule on the 2004 protest was of no consequence. It certainly did not constitute an error of law.

Substantively the plaintiff complains that the Board was guilty of burden shifting. It cites some specific language in the Board's Order which suggests that on the issue of whether or not the plaintiff was afforded a reasonable opportunity to cure its sales deficiencies, which it argues was something that should have been Nissan's burden, it was determined to be the burden of Seacoast. A review of the language of the decision however leads the Court to believe that the Board correctly placed the burden of proof on the defendant to show that it acted in good faith with respect to proving just cause for termination. Because the issue of reasonable opportunity to cure sales deficiencies falls under the umbrella of good cause for termination, and because the burden of proof is clearly on the defendant to show good cause for termination as recognized by the Board, the Court cannot conclude that there was any burden shifting in this case.

The plaintiff next argues that the Board committed several errors of law by finding that the defendant did not violate RSA 357-C. Specifically Seacoast argues that Nissan imposed unreasonable restrictions on its ability to transfer the dealership; and Nissan

5

refused to provide it with a Sales and Service Agreement unless it agreed to accept onerous restrictions and agreed to a one million dollar liquidated damages clause. All of these claims are fact based, and the record reflects that they were all duly considered and rejected by the Board.

The plaintiff's legal memorandum in support of its appeal is twenty-two pages in length. Yet only one paragraph on page 19 addresses what the overriding opinion of the Board was in its determination that the defendant properly terminated the Dealership Agreement with the plaintiff. The Board properly focused its attention on what has to be the most important consideration for any Dealership Agreement, namely the sale of motor vehicles. In its application to Nissan the plaintiff represented that it would sell 300 new vehicles and spend over $325,000.00 on Nissan advertising the first year alone. The plaintiff does not deny that it "promised" to sell 300 cars a year at its facility. The plaintiff misses the point when it argues that such a promise is not entitled to legal enforceability status.

A substantial part of the Board's decision involved an analysis of the plaintiff's sales beginning in 2001 running through 2009. Indeed there were three separate exhibit charts contained in the Board's decision focusing on the issue. It found in its decision that "during its term as a Nissan dealer Seacoast consistently demonstrated poor sales performance and a lack of effort in making Nissan sales." (p 9) The bottom line is that the evidence showed that the average sale over eight years of Nissan vehicles by the plaintiff was 150, just half of what was "promised". While that promise may not be legally enforceable, it is an indication that the plaintiff's facility was woefully underperforming with respect to Nissan sales. There is also a comparison of the plaintiff's dealership with other Nissan dealerships which shows that the plaintiff's

performance was grossly substandard. The evidence also reflected the fact that only a fraction of the amount promised was spent by Seacoast on Nissan advertising.

Seacoast has attempted to offer various "excuses" as to why it was unrealistic to expect it to sell 300 vehicles a year, and why the "fault" for under sales should be attributed to the wrongful conduct of the defendant as apposed to its own deficiencies. However the Board elected to accept the evidence presented by the defendant on these issues and rejected the evidence submitted by the plaintiff. The Board was the fact finder in this case and therefore had the prerogative of sifting through the evidence and electing to give the greatest weight to the evidence showing poor performance on the part of the plaintiff. It adopted in full the testimony and analysis of Nissan's expert witness, Sharif Farhat. Simply stated, the Board found that Nissan set forth reasonable sale expectations and the method by which they would be measured under the Dealership Agreement. The Board concluded that those expectations were not met and that the failure to meet the expectations rested with the plaintiff not the defendant. There was sufficient evidence in the record to support that finding.

For all the reasons set forth herein, the plaintiff's appeal of the decision of the New Hampshire Motor Vehicle Industry Board is Denied.

So Ordered.

DATED: November 29, 2010

Kenneth R. McHugh
Presiding Justice